UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| NATIONWIDE ASSURANCE COMPANY, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. 3:25-CV-769-CHB |
| v. | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| CO APARTMENTS LLC d/b/a COLONIAL OAKS APARTMENTS, et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on two motions. First, Defendant Peggy Miles filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b) ("Motion to Dismiss"), [R. 10], in which Defendant Miles asks the Court to decline jurisdiction over the complaint for declaratory relief, [R. 17], filed by Plaintiffs Nationwide Assurance Company and Nationwide Mutual Insurance Company (collectively, "Nationwide"). *See* [R. 1]. Nationwide responded, [R. 14], and Miles replied. [R. 19]. Shortly thereafter, Nationwide sought and obtained a Clerk's entry of default against Defendants Alltrade Service Solutions, LLC and CO Apartments, LLC, pursuant to Federal Rule of Civil Procedure 55(a). [R. 20]; [R. 21]. Nationwide has now moved the Court for entry of a default judgment against these defendants, pursuant to Rule 55(b), specifically requesting a default judgment declaring that Nationwide has no duty to defend or indemnify these Defendants in a related state court proceeding. [R. 22]. For the reasons set forth herein, the Court will grant the Motion to Dismiss, [R. 15], and deny as moot the Motion for Default Judgment, [R. 22].

## I. BACKGROUND

On November 20, 2024, Miles filed suit in Jefferson Circuit Court in Jefferson County,

- 1 -

Kentucky, against CO Apartments LLC ("CO Apartments") and Alltrade Services Solutions LLC ("Alltrade"). [R. 1, ¶ 7]; [R. 1-5 (State Court Complaint)]. CO Apartments and Alltrade owned and operated the apartment complex, Colonial Oaks Apartments, where Miles lived in December 2023, when she slipped and fell in the bathroom of her apartment. *See* [R. 1-5, ¶¶ 3, 5, 10]. In her state court complaint, Miles alleged that that her fall resulted from a leaking ceiling in the bathroom, for which she had previously submitted seventy-eight maintenance requests. [R. 1, ¶ 7]. Miles alleged that CO Apartments and Alltrade "had a duty to maintain and keep [the] premises safe for the use of [their] patrons as well as to use reasonable care to avoid causing injury to others," but due to their "negligent acts/and or omissions," she "was injured by a dangerous condition created and/or not properly maintained" by CO Apartments and Alltrade. [R. 1-5, ¶¶ 9–10].

CO Apartments was served with a copy of the state court complaint on November 23, 2024. [R. 1, ¶ 8]; [R. 1-6].[1] Alltrade was served on December 3, 2024. [R. 1, ¶ 9]; [R. 1-7]. On May 30, 2025, after CO Apartments and Alltrade failed to appear in the state court matter, Miles moved for default judgment. [R. 1, ¶ 10]; [R. 1-8]. On June 11, 2025, the state court granted the motion, entered a default judgment as to liability, and scheduled a damages hearing. [R. 1, ¶ 11]; [R. 1-9]. The damages hearing was initially scheduled for August 18, 2025, but was eventually continued to October 28, 2025. [R. 1-9]; [R. 14-8].

On October 21, 2025, CO Apartments notified its insurer, Nationwide, of the lawsuit. [R. 1, ¶ 13]. Nationwide had previously issued Business Owners Policy, Policy No. ACP BP013120081194 ("Primary Policy") to CO Apartments for the policy period of June 9, 2023 through June 9, 2024. [R. 1, ¶ 21]; [R. 1-16]. Nationwide had also issued an Umbrella Policy,

---

[1] The complaint alleges that CO Apartments was served on November 23, 2025. [R. 1, ¶ 8]. However, the Court understands this to be a typo, and the attachments to the complaint indicate that CO Apartments was served on November 23, 2024. *See, e.g.* [R. 1-6]. The Court makes no ruling as to whether this service was proper and effective.

Policy No. ACP CU 013120081194, to CO Apartments for the same policy period. [R. 1, ¶ 22]; [R. 1-17]. Under these policies, Nationwide has the duty to indemnify and defend CO Apartments against any lawsuit seeking damages for "bodily injury" or "property damage" resulting from an "occurrence," as those terms are defined by the policies. *See, e.g.*, [R. 1, ¶¶ 24–26]. However, the policies require the insured to notify Nationwide of any occurrences that may result in a claim. *See, e.g., id.* at ¶¶ 27–28. Specifically, the policies require the insured to notify Nationwide "as soon as practicable." *Id.* ¶ 27.

On October 27, 2025, Nationwide issued a reservation of rights letter and denial to CO Apartments and Alltrade. *Id.* ¶ 15; [R. 1-12]. In the letter, Nationwide disclaimed coverage for the state court claims due to the insureds' failure to promptly notify Nationwide of the lawsuit, as required by the policies. *See* [R. 1-12].

Nationwide also retained defense counsel to appear in the state court lawsuit on behalf of CO Apartments and Alltrade.[2] [R. 1, ¶ 16]. Through counsel, CO Apartments and Alltrade sought to set aside the default motion and leave to file a late answer. *Id.* On October 28, 2025, the state court held a hearing on the motion, but it denied the motion and continued with the previously scheduled damages hearing. *Id.* at ¶ 18. On November 26, 2025, the state court awarded damages to Miles in the amount of $816,190.73. *Id.* at ¶ 19; [R. 1-14].

On December 5, 2025, counsel for CO Apartments and Alltrade filed a Motion to Alter, Amend, or Vacate Judgment ("Motion to Alter, Amend, or Vacate"), [R. 14-13], and a Motion to Stay Execution of the final judgment. [R. 14-14]. Those motions are fully briefed and remain pending in the state court lawsuit. [R. 10, pp 3–4]; [R.19-1].

---

[2] Nationwide makes much of the fact that Miles refers to state court defense counsel as "Nationwide's retained counsel" or "Nationwide's counsel." [R. 14, p. 5]. It is clear from Miles's briefing, however, that she understands that Nationwide hired counsel to represent CO Apartments and Alltrade in the state court litigation, and that Nationwide is not a party to that lawsuit. *See generally* [R. 10]; [R. 19].

On December 9, 2025, four days after the Motion to Alter, Amend, or Vacate was filed in the state court matter, Nationwide initiated the present lawsuit. [R. 1]. In its complaint for declaratory relief, Nationwide asserts diversity jurisdiction under 28 U.S.C. § 1332 and seeks to invoke the Declaratory Judgment Act, 28 U.S.C. § 2201. *Id.* ¶¶ 30, 49. Specifically, Nationwide alleges that the state court claims are not covered by the insurance policies because CO Apartments and Alltrade failed to notify Nationwide of the occurrence and the lawsuit. *Id.* ¶¶ 32–48. As such, Nationwide seeks a declaratory judgment that it is "not obligated to defend and/or indemnify Defendant CO Apartments and/or Alltrade Services Solutions LLC with respect to the claims asserted by Defendant Peggy Miles in the underlying lawsuit under the Primary Policy or the Umbrell Policy." *Id.* at 19.

Miles was served on or about January 23, 2026. [R. 11]. She thereafter filed the pending Motion to Dismiss. [R. 10]. In her motion, she argues that the Court should decline to exercise jurisdiction under the Declaratory Judgment Act, citing the factors set forth in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984). That motion is now fully briefed. [R. 14]; [R. 19].

Shortly thereafter, Nationwide sought and obtained a Clerk's entry of default against Defendants Alltrade Service Solutions, LLC and CO Apartments, LLC, pursuant to Federal Rule of Civil Procedure 55(a). [R. 20]; [R. 21]. Nationwide has now moved the Court for entry of a default judgment against these defendants, specifically requesting a default judgment declaring that Nationwide has no duty to defend or indemnify these defendants in the related state court proceeding. [R. 22].

For the reasons set forth herein, the Court will grant the Motion to Dismiss, [R. 15], decline to exercise its jurisdiction under the Declaratory Judgment Act, and deny as moot the Motion for

- 4 -

Default Judgment, [R. 22].

## II. ANALYSIS

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). As the use of the permissive "may" suggests, "a district court's ability to hear an action under the Declaratory Judgment Act does not compel it to do so." *Grange Mut. Ins. Co. v. Safeco Ins. Co. of America*, 565 F. Supp. 2d 779, 785 (E.D. Ky. 2008) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942)). Rather, "this act '[c]onfers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)); *see also Cardinal Health, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 29 F.4th 792, 801 (6th Cir. 2022) ("We afford district courts 'substantial discretion to exercise jurisdiction in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp.'" (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008))).

However, "[d]istrict courts must exercise this discretion cautiously." *Id.*; *see also W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (explaining that Court's discretion under the Declaratory Judgment Act "must not be unguided"); *but see Cardinal Health*, 29 F.4th at 801 (explaining that the Sixth Circuit is reluctant to reverse a lower court's decision to abstain under *Grand Trunk*, and noting that it has "generally only done so when the district court did not engage in the *Grand Trunk* analysis at all" (citations omitted)). As courts within the circuit have previously explained, "We are, after all, courts of limited jurisdiction. And, if our decision to keep a matter

does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources." *Grange*, 565 F. Supp. 2d at 785 (internal citations omitted). The Sixth Circuit has similarly "cautioned district courts not to jump into the middle of ongoing litigation," noting that "declaratory judgment actions seeking an advance opinion of indemnity issues are seldom helpful in resolving an ongoing action in another court." *Id.* (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004)) (internal quotation marks omitted). Nevertheless, "no per se rule exists against exercising jurisdiction" under the Declaratory Judgment Act. *Id.* (citing *Bituminous*, 373 F.3d at 812–13).

The Sixth Circuit has identified two general principles to determine whether it would be appropriate to accept jurisdiction over a declaratory judgment action:

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

*Grand Trunk*, 746 F.2d at 326 (citation omitted). With these general principles in mind, the Sixth Circuit articulated five factors to guide district courts as they consider whether to exercise jurisdiction under the Declaratory Judgment Act:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Id.* (citation omitted). The Court will consider each of the *Grand Trunk* factors in turn.

Before doing so, however, the Court briefly addresses Nationwide's argument that "[it]

properly brought this action in federal court pursuant to 28 U.S.C. § 1332" by invoking diversity jurisdiction. [R. 14, pp. 15–16, 17]. "[F]ederal jurisdiction under [the Declaratory Judgment Act] is not the same as diversity or federal question jurisdiction because the statute 'confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Certain Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, No. 12-39-ART, 2012 WL 3067579 (E.D. Ky. July 27, 2012) (quoting *Wilton*, 515 U.S. at 286). Thus, even where diversity jurisdiction exists, the Court may still decline to exercise discretionary jurisdiction under the Declaratory Judgment Act. As such, the Court turns to the *Grand Trunk* factors.

### A. Factor One

The first *Grand Trunk* factor asks "whether the declaratory action would settle the controversy." *Id.* In the Sixth Circuit, "[t]wo lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability." *Flowers*, 513 F.3d at 555. The key distinction between these two lines of precedent is whether the declaratory action must settle the controversy in the state court action, or whether it need only settle the insurance coverage dispute. Some cases hold that "a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id.* (citations omitted). "A different group of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id.* (citations omitted).

The Sixth Circuit has examined the reasoning for this split and has "suggested that the contrary results found in these cases might be explained by their different factual scenarios." *White Pine Ins. Co. v. McIntosh*, 5:21-238-KKC, 2022 WL 2512771, *5 (E.D. Ky. July 6, 2022) (citing

*Flowers*, 513 F.3d at 555); *see also Flowers*, 513 F.3d at 555–56 (discussing the two lines of precedent). For example, in cases involving "fact-based question[s] of state law" already before the state court, the Sixth Circuit has found that declaratory relief in the federal court would not settle the controversy. *See Flowers*, 513 F.3d at 555 (discussing *Bituminous*); *Bituminous*, 373 F.3d at 814–13 (explaining that this factor weighed against exercising jurisdiction where key factual issues would be resolved in two independent state court proceedings); *Frankenmuth Mutual Ins. Co. v. Balis Campbell, Inc.*, 510 F.Supp.3d 482, 491–92 (E.D. Ky. 2020) (finding this factor weighed in favor of exercising jurisdiction where only the duty to defend was at issue, meaning that coverage issue could be resolved without further development of the facts); *General Star Nat'l Ins. Co. v. Terry Flinchum CPA, Inc.*, 6:22-CV-189-CHB, 2023 WL 3956150, *13 (June 12, 2023) (finding that the coverage issues could be resolved by looking only to the allegations in the complaint, meaning no relevant facts needed to be developed in state court and this factor weighed in favor of exercising jurisdiction); *Nautilus Ins. Co. v. KC Diamond Sports Studio, LLC*, No. 21-63-DLB, 2022 WL 2911656 (E.D. Ky. July 22, 2022) (explaining that factual determinations regarding a party's bodily injuries and damages, which were before the state court, were necessary to determining whether the insurance company owed a duty to indemnify).

The Sixth Circuit has also found that this first factor weighs against exercising jurisdiction where a declaratory judgment would not be binding on all relevant parties, such as when a state-court party is not joined in the federal action. *See, e.g.*, *id.* (discussing *Bituminous*); *Travelers Indem. Co. v. Bowling Green Prof. Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007) (noting that certain parties who may be affected by the Court's declaratory judgment were not joined in the federal action and therefore concluding that the first two factors weighed against exercising jurisdiction); *Bituminous*, 373 F.3d at 814 (finding that a declaratory judgment would *not* settle

the controversy because a relevant party in the state court proceeding was not made party to the federal action).

Thus, this first factor presents a case-specific inquiry. *See, e.g.*, *White Pine Ins. Co.*, 2022 WL 2512771, at *5. Some common factual considerations include:

> whether the question was already being or could be considered in state court, whether the parties were the same in state and federal court, whether parties in the state action would be bound by the federal court action to which they were not a part, whether the issue was one being developed by state court discovery, and whether the scope of coverage or obligation to defend was before the state court.

*Id.* (quoting *Grange*, 565 F. Supp. 2d at 786); *see also Flowers*, 513 F.3d at 555–56 (discussing factual differences between the two lines of cases).

In the present case, the parties in the state court proceeding, namely, Miles, CO Apartments, and Alltrade, are all parties in this federal proceeding. As such, the relevant parties in the state court action would be bound by a declaratory judgment from this Court. Thus, at least some of the factual considerations cited above weigh in favor of exercising jurisdiction.

For its part, Nationwide also argues that this first factor weighs in favor of exercising jurisdiction, arguing that it is not a party to the state court proceeding, and "[t]he subject matter of that controversy does not pertain to insurance coverage, late reporting to an insurer, or the obligation to defend," issues which are instead only before this federal court. [R. 14, p. 9]. Nationwide also argues that a final, appealable judgment has been entered in the state court providing, and as such, there is no pending dispute in that court. *Id.* Moreover, Nationwide argues, even if the state court judgment is not final, any resolution of disputed factual matters in the state court proceeding "would be wholly unhelpful to this declaratory relief action because it does not involve insurance coverage." *Id.*

The Court disagrees. First, to the extent Nationwide argues that a final judgment has

concluded the state court proceedings, it fails to recognize that the state court defendants, through counsel hired by Nationwide, filed a Motion to Alter, Amend, or Vacate, [R. 14-13], and a Motion to Stay Execution of the final judgment. [R. 14-14]. Both motions remain pending. *See* [R. 19-1]. The state court action therefore remains open and active. And importantly, the state court defendants' Motion to Alter, Amend, or Vacate is premised on the argument that they were not properly served with notice of the state court suit and instead first received notice of Miles's claims on October 17, 2025, at which time they "promptly contacted" Nationwide. [R. 14-13, p. 2]; *see also id.* at 6–7. Thus, the state court defendants have raised in the state court lawsuit the very coverage-related issues (or at least closely related issues) which Nationwide now seeks to litigate in this federal lawsuit, that is, whether the insured entities timely notified Nationwide of the state court claim.

When coverage-related issues are *not* before the state court, some courts have found that this first *Grand Trunk* factor weighs in favor of exercising jurisdiction. *See White Pine*, 2022 WL 2512771, at *7 (collecting cases). But in the present case, the coverage-related issue (i.e., when the insureds received notice of the state court lawsuit and whether they promptly notified the insurer) *is* being litigated in the state court, via the Motion to Alter, Amend, or Vacate filed by the state court defendants. *See* [R. 14-12]. And while that issue may not involve novel or complex issues of state law, it does present factual questions that are also being decided in the state court matter.

The Court is also mindful that "competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible" counsel against exercising discretion. *Flowers*, 513 F.3d at 555; *see also Grange*, 565 F. Supp. 2d at 788–89 (acknowledging that a federal declaratory action would resolve the discrete question

- 10 -

before the Court but recognizing that it would not "settle the ultimate controversy"). For this reason, and for those set forth above, the Court finds that the first *Grand Trunk* factor weighs against exercising jurisdiction. *See generally Crestbrook Ins. Co. v. Hatfield*, No. 5:24-CV-096-CHB, 2024 WL 4784965, at *7–8 (E.D. Ky. Nov. 14, 2024) (ruling similarly where the coverage issue was also being litigated in the state court via a third-party complaint).

## B. Factor Two

Factor two considers "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. This factor "is closely related to the first factor and is often considered in connection with it." *Flowers*, 513 F.3d at 557 (citing *Travelers*, 495 F.3d at 271–72). "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* (citing *Bituminous*, 373 F.3d at 814; *Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448, 454 (6th Cir. 2003)).

As with the first factor, a split has developed among Sixth Circuit jurisprudence "concerning whether the district court decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Id.* (citations omitted). In *Flowers*, the Sixth Circuit found "the former line of precedent to be more persuasive than the latter." *Id.* It explained,

> The requirement that the judgment clarify the legal relationships of the parties is based upon our desire for the declaratory judgment to provide a final resolution of the discrete dispute presented. While the parties may have other tortious or contractual relationships to clarify in state court, our concern in considering the second *Grand Trunk* factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer. Thus, we focus only on whether a federal declaratory judgment will clarify the legal relationships presented to the district court.

*Id.*

Thus, in *Flowers*, the Court found that the second factor supported the district court's exercise of jurisdiction, as it clarified the legal relations at issue in that case—"namely, the contractual duties of indemnification owed by [the insurance company] to the [declaratory defendant]." *Id.* The Court noted that, "[w]hile [the declaratory action] did not clarify all of the legal relationships at issue in the state court action, the district court's decision did not create any confusion about the resolution of those issues," nor would it "confuse the state court's analysis of [the] liability issues." *Id.* In more recent decisions, the Sixth Circuit again affirmed the lower courts' exercise of jurisdiction, finding no abuse of discretion as to the second *Grand Trunk* factor where the declaratory action clarified the legal relationships of the parties to the declaratory action, but not the state court litigation. *See United Specialty Ins. Co. v. Cole's Place*, 936 F.3d 386, 398–99 (6th Cir. 2019); *Massachusetts Bay Ins. Co. v. Christian Funeral Directors, Inc.*, 759 Fed. App'x 431, 438 (6th Cir. 2019).

The Court acknowledges that the requested declaratory judgment will resolve certain coverage issues between Nationwide and the state court defendants, CO Apartments and Alltrade. More specifically, it will resolve the question of whether any coverage, for defense or indemnity, is available to those state court defendants. Resolution of these coverage issues will not necessarily resolve all of the issues in the state court matter, of course. The state court must still determine whether there is any basis for vacating its judgment, and if so, the issues of liability and/or damages may be relitigated. However, while the requested declaratory judgment in this case will "not resolve the relative rights of all parties in the state-court litigation, it does determine whether the insurer must continue defending the insured party." *United Specialty*, 936 F.3d at 399. For these reasons, and under the Sixth Circuit's decision in *Flowers* and recent decisions like *United Specialty*, the Court finds this action will clarify the legal relations of the parties in this case.

However, the Court is mindful that "exercising jurisdiction would serve only a limited purpose in clarifying the legal relations at issue." *White Pine*, 2022 WL 2512771, at \*9.[3] If this Court exercises jurisdiction, it must then go on to decide the coverage-related issues which are at the heart of the state court defendants' Motion to Alter, Amend, or Vacate. In doing so, the Court could also be forced to decide disputed facts relevant to that state court motion. Thus, this Court "could either reach the same conclusion as the state court, in which case the declaration would have been unnecessary and the federal litigation a waste of judicial resources, or . . . [this Court] could disagree with the state court, resulting in inconsistent judgments." *Corporex Development & Construction Management, LLC v. Baker Concrete Construction, Inc.*, No. 2:24-186-DCR, 2025 WL 836566, at \*3 (E.D. Ky. Mar. 17, 2025) (quoting *Bituminous*, 373 F.3d at 816) (internal quotation marks omitted). "Thus, even if the controversy is 'settled' *in one forum*, it will frustrate the efficient expenditure of judicial resources." *Id.* (emphasis in original). As such, and giving the benefit of the doubt to Nationwide on the issue, the Court finds that this second factor is, at best, neutral. *See Crestbrook*, 2024 WL 4784965, at\*9 (ruling similarly); *but see Corporex*, 2025 WL 836566, at \*3–4 (considering similar concerns and finding that the first and second factors weighed against exercising jurisdiction).

### C. Factor Three

Under the third *Grand Trunk* factor, the Court asks whether the declaratory judgment action "is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Grand Trunk*, 746 F.2d at 326. As to this factor, the Sixth Circuit has explained that "[f]iling a declaratory judgment action in a forum separate from the underlying

---

[3] This Court previously found in Abundance Coal that the declaratory action would clarify the legal relationships among the parties, but it nevertheless found that this factor weighed in favor of dismissal, stressing that the declaratory judgment must "serve a truly 'useful purpose' by clarifying the legal relationships among the parties." No. 12-39-ART, 2012 WL 3067579 at \*6 (citations omitted).

- 13 -

litigation is not considered improper by itself." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Flowers*, 513 F.3d at 558). However, plaintiffs who file their suits shortly before the corresponding state court action is filed, "and who seem to have done so for the purpose of acquiring a favorable forum," are subject to scrutiny under this factor. *Flowers*, 513 F.3d at 558 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)) (internal quotation marks omitted).

Typically, courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.* (citations omitted). When no such evidence exists, courts often give the "benefit of the doubt" to the declaratory plaintiff and find that the third factor is neutral. *See, e.g.*, *Bituminous*, 373 F.3d at 814; *Cardinal Health*, 29 F.4th at 797 (acknowledging that some inconsistency in the way it has treated the third factor in the absence of evidence of procedural fencing, but finding no abuse of discretion where district court deemed the third factor neutral). In such cases, "this factor should be afforded little weight." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Travelers*, 495 F.3d at 272); *see also United Specialty*, 936 F.3d at 399 (explaining that this factor "usually does not weigh heavily in the analysis").

In the present case, Miles insists that she "has not forum shopped, but Nationwide has." [R. 10, p. 10]. Specifically, Miles notes that Nationwide hired counsel to represent CO Apartments and Alltrade in the state court proceeding, and through that counsel, proceeded to file various motions, but Nationwide nevertheless "runs to this Court for declaratory relief." *Id.* This behavior, Miles argues, "smacks of forum shopping." *Id.* In response, Nationwide again characterizes the state court matter as having been resolved by final judgment, which, it argues, "end[ed] the litigation such that no controversy would exist in state court for the declaratory judgment to be litigated." [R. 14, p. 10]. Regardless, Nationwide continues, it filed this declaratory suit after the state court litigation began, and as a result, it is "entitled to a presumption of proper motivation."

*Id.* at 10–11 (citing *Auto-Owners Ins. Co. v. Egnew*, 152 F. Supp. 3d 868, 877 (E.D. Ky. 2016)).

The Court harbors concerns of procedural fencing in this action. True, this federal declaratory action was filed December 9, 2025, over one year after Miles filed her complaint in state court on November 20, 2024. *See* [R. 1]; [R. 1-5]. Generally, courts "'do not make a finding of procedural fencing if the declaratory-judgment plaintiff filed *after* the commencement of litigation in state court.'" *Employers Mutual Casualty Co. v. Clifford*, No. 5:23-271-KKC, 2024 WL 2221445, *3 (May 15, 2024) (quoting *Cole's Place*, 936 F.3d at 399). And, as noted above, "[f]iling a declaratory judgment action in a forum separate from the underlying litigation is not considered improper by itself." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Flowers*, 513 F.3d at 558).

Nevertheless, the Court cannot overlook the timeline and circumstances of these related cases. First, while Nationwide filed this declaratory action over a year after the state court litigation began, it was not notified of the state court litigation until October 21, 2025. [R. 1, ¶ 13]. Thus, it filed this declaratory action just over a month after it became aware of the state court lawsuit, and perhaps more importantly, only thirteen days after the state court issued its damages award in favor of Miles and only four days after the state court defendants, through counsel hired by Nationwide, sought to alter, amend, or vacate that state court judgment. *See* [R. 1-14]; [R. 14-13]. When Nationwide then filed this suit seeking a declaratory judgment that it owed no duties to defend or indemnify the state court defendants, it did so knowing that those same state court defendants had previously failed to appear in the state court lawsuit, resulting in a default judgment against them. [R. 14, p. 3]. Nationwide also knew that Alltrade was dissolved in 2023 and had never notified Nationwide about the lawsuit. *Id.* at 3; [R. 14-7, p. 2]. Nationwide then sued these same defendants in another forum where they again predictably failed to appear, ensuring Nationwide a Clerk's

- 15 -

entry of default, *see* [R. 21], and the ability to seek a default judgment, [R. 22], prior to the resolution of the state court Motion to Alter, Amend, or Vacate.

This could suggest that Nationwide utilized the Declaratory Judgment Act in this federal forum "for the purpose of 'procedural fencing.'" *Grand Trunk*, 746 F.2d at 326. That is, it appears that Nationwide sought a quick declaratory judgment by way of default, thereby ensuring that it would no longer have to defend the state court defendants in the ongoing state court dispute (if the state court granted the Motion to Alter, Amend, or Vacate), nor indemnify them for the hefty state court judgment (if the state court denied the motion). While this may not be "per se evidence of procedural fencing," it is certainly concerning. *See Coporex Development*, 2025 WL 836566, at *3. The Court therefore finds that this third factor "slightly weighs towards a decision to decline jurisdiction." *Id.*[4]

### D. Factor Four

The fourth factor asks "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Grand Trunk*, 746 F.2d at 326. Like factors one and two, this factor focuses on the presence of novel or complicated state law or factual issues. *See, e.g.*, *United Specialty*, 936 F.3d at 400 ("For purposes of the fourth *Grand Trunk* factor, it is important simply to note that the question does not involve novel or complicated state-law or factual issues."); *Admiral Ins. Co. v. Fire-Dex, LLC*, No. 22-3992, 2023 WL 3963623, *3–4 (emphasizing that the coverage dispute turned on a novel issue of state law). On this point, the Supreme Court has warned that "a district court might be indulging

---

[4] Even if this Court were to give the benefit of the doubt to Nationwide and find no evidence of procedural fencing, "this factor should be afforded little weight in cases where . . . there is no evidence of procedural fencing." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Travelers*, 495 F.3d at 272). Accordingly, this third factor would be neutral, the Court would afford it little weight, and, on balance, the *Grand Trunk* factors would still weigh in favor of declining jurisdiction, for the reasons explained herein.

in '[g]ratuitous interference'" if it permits a federal declaratory relief action to proceed when "another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court." *Flowers*, 513 F.3d at 559 (quoting *Wilton*, 515 U.S. at 283). "However, 'the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction.'" *Id.* at 560 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987)).

The Sixth Circuit has identified three subfactors to aid courts in considering this factor:

(1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814–15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)); *see also United Specialty*, 936 F.3d at 396 (reciting the three subfactors). The Court addresses each subfactor in turn.

### i.  Subfactor 1

Under the first subfactor, the Court must consider "whether the underlying factual issues are important to an informed resolution of the case." *Bituminous*, 373 F.3d at 814 (citing *Roumph*, 211 F.3d at 968). As this Court has explained,

[w]hen the liability issues central to the state court proceeding are distinct from those central to the federal court proceeding, federal jurisdiction is appropriate, but when "the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court," the Court should decline to exercise its jurisdiction.

*Grange*, 565 F. Supp. 2d at 789 (citing *Flowers*, 513 F.3d at 560). For example, in *Flowers*, the parties agreed that the issues raised in the federal declaratory action were distinct from those raised

in the state court litigation. *Flowers*, 513 F.3d at 560. Because the issues were distinct,  that subfactor weighed in favor of exercising jurisdiction. *Id.*; *see also Grange*, 565 F. Supp. 2d at 789. Similarly, in *United Specialty*, the Sixth Circuit found this factor to weigh in favor of exercising jurisdiction because a comparison of the state court complaint and the federal declaratory judgment complaint revealed "no as-yet-unresolved factual issues [in the state court case] that stand between [the] federal court and its informed resolution of the coverage  question." 936 F.3d at 400; *see also Wilcoxson v. Principal Life Ins. Co.*, 1:23-CV-00111-GNS-HBB, 2024 WL 1776390, at *4 (W.D. Ky. April 24, 2024) ("In cases seeking a declaration regarding 'the scope of insurance coverage,' the Sixth Circuit has 'recognized that such questions can sometimes be resolved as a matter of law and do not require factual findings.'" (quoting *Flowers*, 513 F.3d at 560)). On the other hand, if the declaratory judgment action is dependent on factual findings that will be made by the state court or on an unresolved question of state law, this subfactor weighs against exercising jurisdiction. *See Massachusetts Bay*, 759 F. App'x at 439– 440; *Bituminous*, 373 F.3d at 815; *Travelers*, 495 F.3d at 272.

As to this first subfactor, Miles argues that, if the Court accepts jurisdiction, "it runs the risk of making factual findings that might conflict with similar findings in the pending state court action, including but not limited to waiver of any defenses Nationwide may have had to the state court's default judgment." [R. 10, p. 11]. In response, Nationwide argues that the underlying factual issues in the state court lawsuit have already been resolved, as evidenced by the state court's judgment. [R. 14, p. 13]. And the factual issues relating to the state court defendants' liability are not "relevant to the insurance coverage question presented in this declaratory action." *Id.* "Further," Nationwide argues, "the issue of CO Apartments and Alltrade defaulting in Jefferson Circuit Court is a wholly different issue than rights and obligations under the insurance policy that

- 18 -

is the subject matter of this Declaratory Judgment Action." *Id.* at 14.

The Court disagrees. In making this last argument, Nationwide characterizes the factual issues in this case as follows: "when CO apartments and Alltrade notified Nationwide of this claim, and *whether that notice was provided as soon as practicable as required by the insurance policies*." *Id.* (emphasis added). Indeed, as already explained, the insurance policies require the insureds to notify Nationwide of the lawsuit "as soon as practicable." *See* [R. 1, ¶ 27]. Thus, to determine whether CO Apartments and Alltrade provided notice of the state court action "as soon as practicable," this Court must first determine when the state court defendants were notified of the underlying state court lawsuit. This factual question, in turn, overlaps with the factual questions currently pending in the state court proceeding, such as whether proper service was made on the state court defendants. In that litigation, CO Apartments and Alltrade, through counsel hired by Nationwide, seek to vacate the state court judgment, arguing that they did not receive proper notice of the state court lawsuit. *See, e.g.*, [R. 14-13 ("The Defendants have argued and maintain that they did not receive actual notice of the Plaintiff's Complaint.")].

Simply put, the factual issues at play in this federal declaratory action overlap significantly with the issues before the state court by virtue of the state court defendants' Motion to Alter, Amend, or Vacate.[5] As such, this declaratory judgment action is dependent on the factual findings of the state court, and this case does not involve "separate and distinct issues from the liability issues litigated in [the state court]." *Frankenmuth*, 510 F.Supp.3d at 496; *see also White Pine*, 2022 WL 2512771, at *12 (ruling similarly). This first subfactor therefore weighs against exercising jurisdiction.

---

[5] Moreover, even if the factual issues in the present matter did not overlap significantly with those in the state court lawsuit, the factors, on balance, may nevertheless counsel toward declining jurisdiction.

### ii. Subfactor 2

This second subfactor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. Typically, this subfactor weighs in favor of exercising jurisdiction "when the state law is clear and when the state court is not considering the issues." *Id.* For example, "when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" *Id.* (quoting *Northland*, 327 F.3d at 454); *see also Cardinal Health*, 29 F.4th at 799 ("If 'the state law is clear and  . . . the state court is not considering the issues,' this subfactor has less force." (quoting *Flowers*, 513 F.3d at 560)).  However, when the declaratory action involves novel issues of state law, it usually weighs against jurisdiction because "[w]e generally consider state courts to be in a better position to evaluate novel questions of state law." *Bituminous*, 373 F.3d at 814 (citing *Travelers*, 495 F.3d at 272).  However, "novelty is not the only concern." *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *4 (holding that while the state-law questions were not particularly novel, "this case involves only questions of state law . . . indicat[ing] the possibility of friction with the state court").  In some cases, the Sixth Circuit has placed greater emphasis on the state court's superior ability to resolve questions of state law, "without immediately pointing to the novelty of the state law issues." *Id.* (citing *Bituminous*, 373 F.3d at 815).

With respect to this second subfactor, both parties agree that the pending issues do not involve novel questions of state law. *See* [R. 10, p. 12]; [R. 14, p. 15]. Regardless, district courts in this circuit have repeatedly emphasized that, with respect to this subfactor, "novelty is not the only concern." *Frankenmuth*, 510 F.Supp.3d at 497 (quoting *Abundance Coal*, No. 12-39-ART,

2012 WL 3067579, at *4) (internal quotation marks omitted); *see also General Star*, 2023 WL 3956150, at *17. Much like the present case, those cases presented questions of state, not federal law. *See Frankenmuth*, 510 F.Supp.3d at 497; *General Star*, 2023 WL 3956150, at *17. This Court explained that, "novel or not," the state law issue could be resolved by the state court, which had a "superior ability to apply its own law." *Frankenmuth*, 510 F.Supp.3d at 497; *General Star*, 2023 WL 3956150, at *17; *see also Grange*, 565 F. Supp. 2d at 790 ("Since this is an insurance action, the state court is better situated to decide the issue, weighing against jurisdiction."). The Court found that this weighed against the exercise of jurisdiction. *Frankenmuth*, 510 F.Supp.3d at 497; *General Star*, 2023 WL 3956150, at *17.

Nevertheless, in this case, Nationwide insists that this subfactor weighs in favor of exercising jurisdiction because "the state court is not/did not consider the insurance coverage issues." [R. 14, p. 15]. But the Court has already explained that, while the state court may not be tasked with interpreting the insurance policy's notice provisions, it must still determine when the state court defendants received sufficient notice of the state court lawsuit and whether they promptly provided notice to Nationwide—issues that bear directly on the request for declaratory relief currently pending in this Court. As such, the coverage-related issues, which involve questions of state law, are squarely before the state court, which will have a more complete picture of the facts before it. As a result, the Court finds that the state court is in a better position to determine the issues of fact and law raised by this declaratory action. This second subfactor therefore weighs against exercising jurisdiction. *See White Pine Ins. Co.*, 2022 WL 2512771, at *12 (noting that the issue of insurance coverage was already before the state court via a bad faith claim, a fact which weighed against exercising jurisdiction); *see also Flowers*, 513 F.3d at 560 ("[W]hen an insurance company '[is] not a party to the state court action, and neither the scope of

insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" (quoting *Northland*, 327 F.3d at 454)).

### iii.  Subfactor 3

Under the third subfactor, the Court must consider "whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Bituminous*, 373 F.3d at 814–15 (citing *Roumph*, 211 F.3d at 968).  In other words, this subfactor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. For example, in cases involving insurance contract interpretation issues, the Sixth Circuit has held that such issues are generally "questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Id.* (quoting *Travelers*, 495 F.3d at 273) (internal quotation marks omitted). This is true because "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id.* (quoting *Bituminous*, 373 F.3d at 815) (internal quotation marks omitted); *but see Northland*, 327 F.3d at 454 (finding that the Court's exercise of jurisdiction would not create friction between the state and federal courts).

As to this subfactor, Miles argues that "[t]his case clearly presents a public policy issue." [R. 10, p. 13]. More specifically, she argues that "state courts are better positioned to consider the state public policy issues that will no doubt govern whether [the] coverage exception applies," and "there is no federal common or statutory law dictating resolution of" this federal case. *Id.* Nationwide, on the other hand, argues that this federal case does not involve questions "that would

- 22 -

implicate important state policies" because it is a merely a "contract dispute between an insurance company and its insureds regarding whether the insured complied with policy conditions." [R. 14, p. 16]. In making this argument, Nationwide emphasizes that the questions at issue in this case requires only "a straightforward application of established Kentucky insurance law." *Id.*

While this may be true, the Court nevertheless finds that "this federal lawsuit implicates state policy that could be frustrated by the Court's exercise of jurisdiction." *General Star*, 2023 WL 3956150, at \*18 (citing *Frankenmuth*, 510 F.Supp.3d at 497). The Sixth Circuit has made clear that "[i]nterpretation of Kentucky insurance contracts is guided by state public policy. Despite the clear indications from the Kentucky courts regarding how such an issue should be resolved, Kentucky courts are in a better position to resolve the insurance policy interpretation in this case." *Flowers*, 513 F.3d at 561. This Court agrees with that analysis. *See, e.g.*, *Frankenmuth*, 510 F.Supp.3d at 497. Furthermore, the Sixth Circuit recently endorsed that same analysis in *United Specialty*, holding that "even in cases where state law has not been difficult to apply, this court has usually found that the interpretation of insurance contracts is closely entwined with state public policy." 936 F.3d at 401. The nexus between the legal issues in this case, which relate to the interpretation of the insurance policies, and state policy is clear. "Relatedly, the *lack* of nexus between the state law issues presented and the federal forum is obvious—'[n]o federal-law questions are involved in the coverage issue' before the Court." *Frankenmuth*, 510 F.Supp.3d at 498 (quoting *United Specialty*, 936 F.3d at 401); *see also Cardinal Health*, 29 F.4th at 800 (explaining that in cases where "there are 'no federal laws . . . at issue,' this subfactor 'weighs against exercising jurisdiction" (quoting *Massachusetts Bay*, 759 F. App'x at 440); *Massachusetts Bay*, 759 F. App'x at 440 ("[N]o federal laws are at issue. This . . . weighs against exercising jurisdiction."). Simply put, "[t]his case does not turn on federal law, but rather Kentucky's

- 23 -

interpretation of its insurance contracts—state law that is 'guided by state public policy.'" *Frankenmuth*, 510 F.Supp.3d at 498 (quoting *Flowers*, 513 F.3d at 561); *see also General Star*, 2023 WL 3956150, at *18. This subfactor therefore weighs strongly against exercising jurisdiction.

In sum, each of the three subfactors weigh against exercising jurisdiction, and the fourth *Grand Trunk* factor therefore weighs against exercising jurisdiction.

### E.  Factor Five

Under the final *Grand Trunk* factor, the Court must consider "whether there is an alternative remedy which is better or more effective." *Grand Trunk*, 746 F.2d at 326. In many cases involving insurance coverage issues, the Sixth Circuit has held that an alternative remedy is available through a declaratory judgment under state law or an indemnity action in the state court at the conclusion of the liability proceedings. *See, e.g.*, *United Specialty*, 936 F.3d at 401–01; *Massachusetts Bay*, 759 Fed. App'x at 441–42; *Travelers*, 495 F.3d at 273; *Bituminous*, 373 F.3d at 816–17; *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 462–63 (6th Cir. 1986). In those cases, the Court noted that the coverage issues involved questions of state law; they did not require application of federal common or statutory law. However, the Sixth Circuit has also acknowledged that "it is not clear whether such alternative remedies are better or more effective than a federal declaratory action." *Flowers*, 513 F.3d at 562; *see also Penn-Star Ins. Co. v. Aral, Inc.*, 2:23-166-DCR, 2024 WL 992480, *3 (E.D. Ky. Mar. 7, 2024) (acknowledging that insurers may seek declaratory judgments in state court or file indemnity actions, "[b]ut the availability of such alternatives does not necessarily make them *better* or *more effective* than federal declaratory actions"); *White Pine Ins. Co.*, 2022 WL 2512771, at *14 (reciting similar language). On this issue, Sixth Circuit "precedent is split regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against

- 24 -

the district court exercising jurisdiction." *Flowers*, 513 F.3d at 562 (citations omitted); *see also Cardinal Health*, 29 F.4th at 801 (noting that "[o]ur precedent is 'somewhat inconsistent' with respect to the fifth factor" (quoting *Massachusetts Bay*, 759 F. App'x at 441)).

The Sixth Circuit provided some clarification on this issue in *Flowers*. In that case, the Sixth Circuit explained that, "rather than applying a general rule," the inquiry on this fifth factor "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562. There, the insurer sought a declaratory judgment that it had no duty to indemnify a therapist employed by the insured, a mental health services provider, in a state emotional distress suit stemming from the therapist's sexual affair with a patient. *Id.* at 550–51. The Court noted that, under those circumstances, a state declaratory action would have been better than federal declaratory action "[i]n many ways." *Id.* For example, "Kentucky courts are in a superior position to resolve undecided questions of state law such as whether a therapist's sexual activities with his client are outside the scope of his employment." *Id.* at 562. The Kentucky courts would also have been able to combine the two actions, thereby allowing a single judge to resolve all issues. *Id.* However, the Sixth Circuit also acknowledged that Kentucky law provided clear guidance on this issue, so a federal declaratory action was not "clearly inferior." *Id.*

On the other hand, an indemnity action would *not* have been a superior remedy, because the insurer had attempted to join the state court action but had been prevented from doing so. *Id.* Even if the insurer joined the state court action, it would be required to wait until the liability issues were resolved before determining its obligations to the therapist. *Id.* "Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment." *Id.* More recently, however, the Sixth Circuit upheld the district court's determination that this factor weighed against

exercising jurisdiction because a state court declaratory judgment action "would provide [the insurance company] with the same remedy it seeks in federal court, [and] the state remedy has the advantage of allowing the state court to apply its own law." *United Specialty*, 936 F.3d at 401.

In the present case, Miles argues that Nationwide had several alternative remedies available to it, including filing a declaratory judgment action in state court, intervening in the underlying state court action, or filing a declaratory action in this Court after the state court proceedings end. [R. 10, p. 14]. In response, Nationwide insists that it is entitled to invoke this Court's diversity jurisdiction, [R.14, pp. 17–18], an argument that this Court has already disposed of. *See supra* Section II. Nationwide also argues that there "would be no efficiency gained" from filing a separate action in state court, and there would ne no "comity benefit from having two separate proceedings in state court rather than one proceeding in state court and one in federal court." [R.14, p. 18]. Lastly, Nationwide argues that "waiting to file an indemnity action at the conclusion of the state court lawsuit is not a better or more effective alternative." *Id.* But in support of this argument, Nationwide merely points to the fact that the state court has entered a judgment in the state court lawsuit, which Miles has sought to finalize. *Id.* From this, but with no further explanation, Nationwide argues that it "needs a determination now of whether it has a duty to defend or indemnify so that it can determine its obligations." *Id.*

True, a state indemnity action at the end of the state court proceeding would, in many cases, be an inferior remedy. *See Flowers*, 513 F.3d at 562 (finding that "[s]uch a delayed alternative would be worse, not better, than seeking a federal declaratory judgment"); *White Pine Ins. Co.*, 2022 WL 2512771, at *14 (reciting similar language). Indeed, it requires the insurer "to wait until the liability issues are resolved before determining its obligations." *White Pine Ins. Co.*, 2022 WL 2512771, at *14 (citing similar reasons for finding an indemnity action to be an inferior alternative

remedy). In this case, however, as Nationwide has repeatedly emphasized, the state court litigation has resulted in a finding of liability and a damages award; the only remaining issue before the state court is the pending Motion to Alter, Amend, or Vacate. In the event that the state court denies that motion, Nationwide need not wait long for the state court litigation to conclude.

Regardless, a declaratory action in state court is a better option than this federal declaratory action. First, the specific coverage issues before this court involve questions of state law. Even assuming Kentucky law is clear on that issue, and a federal court could "confidently apply it without fear of creating conflicts with the Kentucky courts or intruding on their jurisdiction, *United Specialty*, 936 F.3d at 400, "Kentucky courts remain in a superior position to interpret that state law and apply it to the facts of this case." *Frankenmuth*, 510 F.Supp.3d at 500 (citing *Flowers*, 513 F.3d at 562).

Thus, a state declaratory action would provide Nationwide with the same remedy that it seeks from this Court, and moreover, "the state remedy has the advantage of allowing the state court to apply its own law." *United Specialty*, 936 F.3d at 401; *see also Massachusetts Bay*, 759 Fed. App'x at 441 (acknowledging that "Tennessee courts are in a superior position to resolve questions of state law"). Furthermore, a state court could combine the two actions (assuming both actions are filed in the same court), allowing a single judge to resolve all issues and avoiding the potential for confusing scheduling problems, issues with the orderly presentation of facts, and res judicata issues. *See Flowers*, 513 F.3d at 562 ("The Kentucky courts might also have been able to combine the two actions so that all issues could be resolved by the same judge."); *Massachusetts Bay*, 759 Fed. App'x at 441 (recognizing that the "Tennessee courts 'might also have been able to combine the two actions so that all issues could be resolved by the same judge.'" (quoting *Flowers*, 513 F.3d at 562)); *Employers Mutual Casualty Co. v. Clifford*, 5:23-271-KKC, 2024 WL 2221445,

- 27 -

at *3 (E.D. Ky. May 15, 2024) ("A declaratory action in Kentucky state court also has the advantage of efficiency, allowing the coverage issue and the underlying state court action to be resolved by the same judge. That would allow the parties to litigate all the issues on one front, rather than two."); *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *5 (citation omitted). Moreover, Nationwide does not argue—and the Court has no reason to believe—that Nationwide's interests would not be adequately protected in a state court declaratory action or that the state court is not in a position to "define its own law in a fair and impartial manner." *Bituminous*, 373 F.3d at 816–17 (quoting *Am. Hom Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986)).

For these reasons, the Court finds that a declaratory action in state court is a better remedy than this federal declaratory action, and this fifth factor therefore weighs heavily against accepting jurisdiction. *See Cardinal Health*, 29 F.4th at 801 (finding that district court did not abuse its discretion in deciding that this factor weighs against jurisdiction "given the availability of [a state court] declaratory action and the fact that the case involves solely state law issues" (citations omitted); *Frankenmuth*, 510 F.Supp.3d at 498–501 (similarly finding that the fifth factor weighs heavily against exercising jurisdiction where the insurance company could pursue the same declaratory relief in the state court); *General Star*, 2023 WL 3956150, at *18–19 (same); *but see Penn-Star Ins. Co.*, 2024 WL 992480, at *4 (finding that "judicial efficiency counsels against exercising jurisdiction" but "does not weigh so heavily as to tip the scales one way or the other overall").

### F.  Balancing the Factors

The Sixth Circuit has never articulated the relative weight of each *Grand Trunk* factor, acknowledging instead that the factors are not always equal. *Flowers*, 513 F.3d at 563; *Cardinal Health*, 29 F.4th at 797; *Admiral* at *2. This Court has explained, however, that "[t]he most

- 28 -

important consideration in exercising this discretion [under the Declaratory Judgment Act] is whether retaining jurisdiction interferes with state-court litigation." *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at \*2. The Sixth Circuit has also indicated that "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on [the] facts of the case." *Hoey*, 773 F.3d at 759; *Admiral*, at \*2. In other words, the Court must balance the five *Grand Trunk* factors on a case-by-case basis. When balancing these five factors, the Court is afforded "unique and substantial" discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

In this case, the second *Grand Trunk* factor is at best neutral, the remaining four factors each weigh in favor of declining jurisdiction. Moreover, "considerations of efficiency, fairness, and federalism," *Hoey*, 773 F.3d at 759, also weigh against exercising jurisdiction. First, the parties are already litigating the coverage-related issues in the state court through the Motion to Alter, Amend, or Vacate. If this Court accepts jurisdiction, it forces the parties to engage in litigation on two fronts "to receive a simple declaration of rights under an insurance contract—a matter that could easily be handled by the state courts that are more familiar with Kentucky insurance law in the first place." *Grange*, 565 F. Supp. 2d at 791. In fact, the state court "is positioned to decide every issue amongst all the parties in this matter, allowing the parties to fight this battle on a single front." *Id.* Furthermore, a federal declaratory action would deprive a state court of the opportunity to interpret and apply its own law. Moreover, since the issue here is not one of federal law but instead involves state-regulated insurance contracts, an issue which this Court has no special interest, this Court is not a superior forum. By declining to exercise its substantial discretion to hear the case, this Court does not "rob" the insurance company of anything. *See id.* at 791–92. Indeed, Nationwide has an adequate (perhaps even superior) remedy via a state court declaratory judgment action. *Id.* at 792.

Lastly, the Court notes that it should not exercise jurisdiction under the Declaratory Judgment Act "unless it serves a useful, practical purpose." *Id.* (quoting *Panhandle E. Pipe Line Co.*, 177 F.2d at 944). "[I]f our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources." *Id.* at 785 (citations omitted). Accordingly, for the reasons set forth above, the Court finds that the *Grand Trunk* factors, when considered together and balanced against considerations of efficiency, fairness, and federalism, weigh heavily against the exercise of jurisdiction. *See Frankenmuth*, 510 F.Supp.3d at 498 (balancing the *Grand Trunk* factors similarly and declining jurisdiction even where some factors weighed in favor of accepting it); *White Pine Ins. Co.*, 2022 WL 2512771, at *15 (balancing the factors and declining jurisdiction, citing similar concerns); *General Star*, 2023 WL 3956150, at *19–20 (same).

## III. CONCLUSION

As set forth above, under the facts of this case, the second *Grand Trunk* factor is at best neutral, and the remaining four factors each weigh in favor of declining jurisdiction. Having balanced these five factors with "underlying considerations of efficiency, fairness, and federalism," and, considering the unique facts of this case, the Court will exercise its broad discretion to decline jurisdiction over this matter under the Declaratory Judgment Act. *See Wilton*, 515 U.S. at 286 (recognizing that district courts are afforded "unique and substantial" discretion under the Declaratory Judgment Act).

Accordingly, **IT IS HEREBY ORDERED** as follows:

1.  Defendant Peggy Miles's Motion to Dismiss, [**R. 10**], is **GRANTED**.

2.  Plaintiffs' Motion for Default Judgment, [**R. 22**], is **DENIED as moot**.

- 30 -

- 31 -

3. The Court declines to exercise its discretion under the Declaratory Judgment Act, 28

   U.S.C. § 2201, and this matter is **DISMISSED WITHOUT PREJUDICE**. The

   Clerk of Court **SHALL STRIKE** this case from the Court's active docket.

4. A separate judgment shall issue.

This the 24th day of April, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY